The DUCTLESS HOOD CO., Inc., New Milford Construction and Repair Company and George A. Scharmer, Plaintiffs,

v.

A AND B HOME APPLIANCES, INC., Defendant.

Civ. No. 19765.

United States District Court E. D. New York.

Sept. 27, 1962.

Roger T. McLean, New York City (Irving Moldauer, N. Dale Sayre, and Adams, Forward & McLean, New York City, of counsel), for plaintiff.

Joseph M. Fitzpatrick, New York City (John T. Cella, Lewis H. Eslinger, and Ward, Neal, Haselton, Orme & McElhannon, New York City, of counsel), for defendant.

DOOLING, District Judge.

Plaintiff Scharmer devised and in 1959 was granted a patent (No. 2,886,-124) on a hood for kitchen ranges that had installed inside it a grease filter, deodorizer, suction unit and ductwork so arranged that the stovetop gases could be sucked in, purged of grease and odors and then recirculated to the kitchen through the louvred front of the hood, all without any connection to the outdoors. In external appearance Scharmer's hood looked like other powered range hoods, save that its downwardly sloping front or visor was louvred so as to serve as the outlet for the purged air to be recirculated. In make-up Scharmer's hood differed from the usual powered kitchen range exhaust hood in the significant respect that it required no costly built-in duct work connecting to the outdoors, since it purified the air within the hood and returned it to the kitchen; it was on this account much cheaper and easier to instal; even more importantly, it could be installed where it was impossible or prohibitively costly to make a connection to the outdoors. The top of Scharmer's hood is flat and is, very expressly, not used as an exhaust or outlet path.

The practical advantages of Scharmer's device and its commercial priority are not to be disparaged. As so often, the question is whether Scharmer's device was already in the public domain when he confected it. Scharmer's hood, complete in all the sub-elements of its identity, did not exist before Scharmer; if it was in the public domain it was so in the sense that nothing beyond the application to existing articles and methods of the common skills commonly employed was necessary to bring the device into being. In the latter sense, it is concluded, Scharmer's ductless hood was already extant in the public domain when he gave it tangible exemplification.

The hood and the aspects in which it claims patentable novelty are simply described. The hood, designed for installation over a cookstove top, includes (i) an opening through which the stove-top gases collected under the hood will be drawn; (ii) a flat rectangular grease filter (e. g., the familiar "metal wool" filter) so located that the gases drawn through the opening have to traverse it and deposit their grease, (iii), a deodorizer (such as a canister, or flat rectangular, type of activated-carbon air-purifier) through which the gases will be drawn, (iv) a motor and fan (or wheel or blower assembly) to create negative pressure under the hood strong enough to suck the gases into the hood opening, through the filter and purifier over the motor and then send them along, and (v) an outlet to the kitchen. So much Scharmer's hood includes and it shares each of these elements and their union with the prior art—and these elements are the operative ones. That is, Scharmer did not devise a method for purify-

ing and recirculating kitchen air. Scharmer did not bring primary elements (old or new) to the makeup of the operative combination of elements. And Scharmer did not introduce a new method of combining the primary elements of this known combination or impose on them any new primary rule of action.

What Scharmer claims as peculiarly his is that combination of these operators in which the entire hood assembly is flat topped and thus adapted for installation under a kitchen cabinet—a desideratum in the modern kitchen that emphasizes efficiency of arrangement and elimination of waste motion—and in which the front or visor of the hood is louvred so that the front of the hood may be the purified-air outlet.

■ The prior art did not disclose this variant of the combination of primary operators and this variant's popularity is striking. Was it patentable invention or a common mechanical response to a product requisition? It seems the latter. It is not invention but its refutation to produce in response to a service request an article every element of which is embodied in the terms of the request—and that is so even if no such product was ever before requested, where, at the least, the request is for a product for a described and evident service. The extant (on paper) device of Sonntag (U. S. Patent No. 2,369,375) presented the primary operators of the combination (the ozonizer *vice* activitated carbon purifier being, for present purposes, an immaterial difference in an element present for an identical function). His difference from Scharmer was that Sonntag's preferred (and illustrated) embodiment of his device emitted the purified air through screened openings in the top. Sonntag's location of the openings in the top of his device was not a *point* of structure that Sonntag was making: he does not mention, though he illustrates, their precise location but rather describes them by their function of returning the air to the kitchen (No. 2,369,375, p. 2. col. 2 lines 10–11, 16–17, 70–72) and not by their location; Sonntag's claims—as it

happens—are not all limited to orifices in the top of his device (see, e. g., claims 1, 2 and 8). Not Sonntag's invention, but Sonntag's illustration of the preferred embodiment of his invention had the exit passages, immaterially, in the top rather than the sides or front or back of his baffle chamber or purifying chamber. That is not to say that Sonntag suggested or illustrated a louvre in the front wall or visor of the hood. He did not. But, he went far enough so that any competent workman, asked for a Sonntag unit to attach to the underside of a kitchen cabinet, would have produced Scharmer without more ado. The request, the bare, unsuggestive empty request, stated in terms of the service desired, not in terms of a means to perform it, automatically would produce the alleged invention; it is the most obvious way to meet the service request; it is the identical obviousness that makes us walk through doorways rather than the adjacent walls.

In the prosecution of the patent, Sonntag was not cited until after the first interview and after the third office action and after the examiner had found that various of the then pending claims had been drawn to patentable subject matter and that certain then pending claims were allowable. Sonntag and others were bravely distinguished by saying, "Vezey, Gaylord, Gay and Sonntag all pass the air upwardly through the top. It is an entirely new concept to discharge the air from a tubular housing beneath the top of the hood, e. g., from the ends of the housing as in Fig. 2 or from the upper portion of the front wall [i. e., the louvre in the visor] thereof as in Figs. 7, 8, 9, 10 and 11. The new concept and the recited means for embodying it defined in claim 3 make it possible to mount the hood directly under a kitchen cabinet, which is impossible with these references, as well as all the other cited art. * * * All of the references except Sonntag No. 2,369,375 give the air only an upward movement. Sonntag gives it first an upward, then a horizontal and then another upward movement, * * *.

These structural and functional differences distinguish patentably over Sonntag and the other patents * * *. The top wall is defined as imperforate. These features are not found in any of the references including Sonntag No. 2,369,-375." (Ex. 14, pp. 42, 43, 44, see also p. 54, discussion of claim 27). Claims, later allowed, were at the same time re-written expressly to incorporate the "below the top" idea by which Sonntag was distinguished—including what had been Claim 3 and is Claim 1 as allowed—notwithstanding that Claim 3 as originally applied for specified "a flat top adapted to be secured directly under a kitchen cabinet", a structure dictating front, side, rear or bottom emission but not, as the claim was drawn, claiming the range of the structures as a patentably novel advance on top emission, which was not, strictly, contemplated by the claim though admitted by it. Further amendment followed a further interview—including a refinement of claim language to distinguish emission "below" the top from emission "beneath" the top (i. e., the side emission in lateral stream of Fig. 3 was thought of as "beneath the top since still within the limits of the hood and the emission through the visor, as in Fig. 10, was considered "below" the top of the hood though outside of it) (Ex. 14, p. 53). Sonntag 2,369,375 was again, inferentially, distinguished (in discussing the degree to which the "top" would be "imperforate") in this language: "The important feature is not whether the top wall is imperforate or not but whether the air discharge opening is in the top wall, as in Sonntag 2,369,375 and other patents, which would prevent the locating of such a hood directly under a kitchen cabinet, or in a free wall beyond the plane of the front of the cabinet, such as the front wall * * * of the presently illustrated embodiments of the invention." (Ex. 14, p. 53) The claims of the patent were then allowed.

■ The mistake of the Patent Office lay in its acceptance of a useful difference in structure as an unobvious advance without, at the critical stage in the prosecution, reconsidering the applicability of the standard of Section 103, as had been done earlier and before the relevancy of Sonntag 2,369,375 was perceived. The resulting mistake was that of accepting a difference in arrangement as invention when it was, from the point of view of patentable novelty, a bare choice in arrangement and not a new devising of arrangements. The obviousness of the union of sub-elements relied on for patentable novelty deprives the patent of validity.